UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH S. DIVINCENTI | CIVIL ACTION |
| VERSUS | NO. 15-522-RLB |
| SHELTER MUTUAL INSURANCE COMPANY AND/OR SHELTER GENERAL INSURANCE COMPANY | CONSENT |

## MEMORANDUM OF DECISION

This matter was tried before the Court, sitting without a jury, on April 4, 2017. Having considered the testimony and evidence presented at trial, the Joint Statement of Established Facts, arguments of counsel, the applicable burden of proof, the post-trial briefing and the applicable law, the Court issues the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

I.  BACKGROUND

This case arises out of an automobile accident that occurred on or about November 1, 2011. In his Petition for Damages filed on October 31, 2013 in the 23rd Judicial District Court, Parish of Ascension, Plaintiff Joseph S. Divincenti claims that a vehicle driven by Tyler D. Perkins failed to yield and ran into the rear of the vehicle driven by Plaintiff. (R. Doc. 1-2 at 1-3). The collision allegedly caused severe personal injuries to Plaintiff. The Petition further alleges that Mr. Perkins was uninsured, and therefore Shelter Mutual Insurance Company and/or Shelter General Insurance Company, his uninsured/underinsured motorist carrier, is liable for his damages.

This matter was removed to this court on August 7, 2015. The parties stipulated that this matter would proceed as a bench trial. (R. Docs. 9, 25). On December 5, 2016, the parties filed a written consent to have a United States Magistrate Judge conduct any and all further proceedings in the case and in accordance with 28 U.S.C. § 636(c), any appeal from judgment would be taken directly to the United States Court of Appeals for the Fifth Circuit. (R. Doc. 14).

The trial was conducted on April 4, 2017.[1] Both parties submitted post-trial memoranda. (R. Docs. 30, 31).

## II. FINDINGS OF FACT

1. At the time of the automobile accident at issue, Tyler Perkins was operating a 2007 Chevrolet HHR bearing VIN 3GNDA33P77S576770 on U.S. Highway 61. (R. Doc. 24).

2. On November 1, 2011, as Plaintiff was operating his 1990 Ford F-350 on U.S. Highway 61, the 2007 Chevrolet driven by Tyler Perkins collided with the rear of Plaintiff's vehicle. (R. Doc. 24).[2]

3. No applicable liability policy applied to the accident at issue, thus Plaintiff's uninsured motorist policy[3] issued by Shelter Mutual Insurance Company is considered primary coverage. (R. Doc. 24).

4. Plaintiff's treating orthopedic physician is Dr. Thad Broussard, who has treated Plaintiff for various back and neck pain intermittently since 1992. Plaintiff sought treatment from Dr. Broussard following an automobile accident in 1993 (Tr. at 54; Ex. 7 at 20) and Dr. Broussard diagnosed Plaintiff with degenerative changes in his back in 1994. (Ex. 10 at 12).

5. As testified to by Dr. Broussard, the accident on November 1, 2011 was an aggravation of Plaintiff's pre-existing condition. (Ex. 10 at 23).

6. Plaintiff was treated conservatively following this accident and was prescribed physical therapy. Plaintiff saw Dr. Broussard for one follow-up appointment in December of 2011 and cancelled his next appointment that was scheduled in January 2012. (Tr. at 64, Ex. 7 at 12, Ex. 10 at 12).

---

[1] The parties submitted 11 Joint Exhibits that were admitted at trial without objection.
[2] The Joint Statement of Established Facts (R. Doc. 24) was amended at trial to reflect that the accident date was November 1, 2011. (R. Doc. 25).
[3] Exhibit 1.

7. Plaintiff attended approximately 6 appointments for physical therapy and missed or rescheduled another 6 appointments. (Ex. 9 at 5-7).

8. Plaintiff reported improvement in his back pain on February 20, 2012 and did not return for any additional physical therapy despite being prescribed such for another four weeks. (Ex. 9 at 6, 27).

9. Plaintiff sought and received medical care, including imaging, physical examinations, medication and physical therapy following the accident, resulting in certain medical expenses incurred as a result of the accident. (Ex. 2).

10. Plaintiff returned to his pre-accident condition prior to March 21, 2013, when he reported no back pain and normal range of motion to Dr. Cooley at the Baton Rouge Clinic. (Tr. at 74; Ex. 3 at 38-39). Plaintiff did not seek further back treatment until November 5, 2013. (Ex. 7 at 7; Ex. 10 at 14). This treatment was unrelated to the accident at issue.

11. Plaintiff testified at trial that prior to the accident at issue he had no lower back pain. This testimony is inconsistent with years of medical records. (Tr. at 51-59). Based on the Court's specific observations of Plaintiff during his testimony, the inconsistency of Plaintiff's testimony with the medical records in evidence, and the implausible explanations given by Plaintiff when confronted by such inconsistencies, the Court finds that Plaintiff's testimony regarding the intensity, persistence and effects of his injuries was not credible.

## III. CONCLUSIONS OF LAW

### A. Nature of Injuries

Based on the evidence admitted at trial, the Court finds that Plaintiff suffered an aggravation/exacerbation of a pre-existing degenerative joint disease as a result of the accident at issue on November 1, 2011. The Court also finds that Plaintiff returned to his pre-accident condition no later than March 21, 2013.

Medical records show that Plaintiff has had issues with his lower back dating back to as early as 1992. (Tr. at 52; Ex. 7 at 26). Plaintiff saw Dr. Thad Broussard beginning in February of 1992, and sought treatment for back and neck pain intermittently between 1992 and 1997. The records from Dr. Broussard's office show that Plaintiff sought treatment from Dr. Broussard following an automobile accident in 1993. (Tr. at 54; Ex. 7 at 20). Dr. Broussard diagnosed

Plaintiff with "degenerative changes" in 1994. (Ex. 10 at 12). He characterized these changes as degenerative joint disease, or arthritis, and opined that this condition was likely exacerbated by the accident that gives rise to this case. Under Louisiana law, defendants must take Plaintiffs as they find them, and an aggravation of a pre-existing condition is compensable up to "the full extent of the aggravation." *Swayze v. State Farm Mutual Auto. Ins. Co*., 184 So. 3d 81 (La. Ct. App. 2d Cir. 2015).

Plaintiff stopped receiving treatment from Dr. Broussard around 1997, but returned in December of 2011 following the accident on November 1, 2011. (Ex. 7 at 13). At that time, he stated that he was involved in an automobile accident in 2010 and "had some spinal discomfort, but it got better on its own." (Tr. at 58; Ex. 7 at 13; Ex. 10 at 7). He also stated that he had been in another accident on November 1, 2011 and that was the reason for his visit on December 5, 2011. (Ex. 7 at 13).

According to Dr. Broussard's deposition, he believes that the November 2011 accident "aggravated a pre-existing problem." (Ex. 10 at 23). He also stated that, it is likely "the accident at that time caused him to be symptomatic." (Ex. 10 at 21). However, he went on further to say that, in most people, an exacerbation of pre-existing degenerative joint disease similar to this one would likely have returned to pre-accident condition within about six months, but no more than a year. (Ex. 10 at 22, 24-25). Plaintiff saw Dr. Broussard for one follow up appointment on December 27, 2011, but cancelled his next appointment on January 10, 2012. (Tr. at 64; Ex. 7 at 12; Ex. 10 at 12).

Dr. Broussard prescribed physical therapy as part of Plaintiff's treatment plan for the November 2011 accident, which he began receiving at Lewy Physical Therapy on January 30, 2012. (Tr. at 67; Ex. 9 at 7, 31). He attended physical therapy on 1/30/12, 2/2/12, 2/9/12,

2/14/12, 2/17/12, and 2/20/12. (Ex. 9 at 6-7). However, he missed or rescheduled appointments on 2/6/12, 2/13/12, 2/16/12, 2/23/12, 2/27/12, and 3/1/12. (Ex. 9 at 5-7).

Plaintiff reported an overall improvement in his back pain on February 20, 2012, and subsequently did not return for physical therapy, though he was prescribed at least another four weeks. (Ex. 9 at 6, 27).

After leaving physical therapy in February of 2012, Plaintiff visited Dr. Cooley at the Baton Rouge Clinic on March 21, 2013 and reported that he had no back pain and a normal range of motion. (Tr. at 74; Ex. 3 at 38-39). This is inconsistent with Plaintiff's trial testimony that he still has not recovered from the November 2011 injury. (Tr. at 49). As stated above, although Plaintiff may have degenerative changes that cause discomfort in his back, the Court finds that Plaintiff's testimony that this is attributable to the accident is not credible and inconsistent with the medical evidence and testimony.

Plaintiff did not receive further treatment on his back until visiting Dr. Broussard on November 5, 2013. (Ex. 7 at 7; Ex. 10 at 14). Dr. Broussard stated that the back pain in 2013 was not attributable to the accident at issue and was a result of the progression of the arthritic changes he had seen earlier. (Ex. 10 at 15). He further explained that the changes he observed would have taken "considerable time to occur." (Ex. 10 at 15). Dr. Broussard stated that Plaintiff would have likely returned to his pre-accident condition in the interim, likely within six months, but no more than a year after the accident. (Ex. 10 at 24-25, 29). "We know from that soft tissue injuries by definition through the millions that have been treated, 90 percent recover within six to eight weeks, 95 percent within six months." (Ex. 10 at 28).

Plaintiff's cancellation of his appointment with Dr. Broussard, his failure to complete the physical therapy sessions as prescribed, and his lack of treatment from February 2012 through

November of 2013 indicates that he returned to his pre-accident condition within the six to twelve month time frame estimated by Dr. Broussard. In *Bernard v. Hartford Ins. Co.*, 12 So.3d 1098, 1102 (La. Ct. App. 3d Cir. 2009), a plaintiff (with similar credibility issues) stopped receiving treatment, and the Louisiana Third Circuit Court of Appeals noted that, "[w]hile a gap in treatment does not necessitate a finding that medical treatment is not related to an accident, a trial court may use a gap in treatment as a factor in analysis when making its decision as to whether medical treatment is related to an accident." In *Burrel v. Williams*, 938 So. 2d at 700 (La. Ct. App. 1st Cir. 2006), plaintiff "did not seek treatment or complain of neck or back pain for several months" after he was discharged by his doctor, which the court used to determine that the trial court was reasonable in finding that his pain and suffering had ended prior to this lapse in treatment. Based on Plaintiff's statements to Dr. Cooley on March 21, 2013, at the latest Plaintiff had returned to his pre-accident condition by this date, despite his assertions to the contrary.

The Court was also able to observe Plaintiff throughout his testimony on both direct and cross examination. Although the Court finds that Plaintiff did suffer some injury as a result of the accident, his testimony regarding the persistence, intensity and effects of such harm was not credible and was inconsistent with the medical testimony and records provided.

For the above reasons, the Court finds that this was an exacerbation or aggravation of a pre-existing injury that was resolved on or before March 21, 2013. Based on the numerous records of prior occurrences of back problems, the symptoms experienced after the November 2011 accident, the cancellation of his follow up appointment with Dr. Broussard, discontinuation of physical therapy, and the reported full range of motion and no back pain, Plaintiff's pre-

existing degenerative joint disease was aggravated by the accident, but he returned to his pre-accident condition on or before March 21, 2013.

### B. Medical Expenses

Although medical expenses (past and future) are proper items of damages, recovery of such damages must be confined to expenses related to the accident. *Gladney v. May*, 697 So. 2d 1022, 1027-28 (La. Ct. App. 2nd Cir.), *cert. denied*, 750 So. 2d 1101 (La. 1998); *see also Vines v. Wood*, 785 So. 2d 126, 130 (La. Ct. App. 2nd Cir. 2001).

The original amount alleged in special damages (medical expenses) as shown in Exhibit 2 was $14,157.84. This number encompasses all treatment initially alleged to be attributable to the accident including: Baton Rouge General ($4,569.00), Baton Rouge Urology ($456.00), Baton Rouge Radiology ($450.00), Red Stick/EMBCC ($1,832.00), Dr. Broussard ($697.00), Imaging Center of Louisiana ($2,242.53), Lewy Physical Therapy ($1,544.00), Baton Rouge Clinic ($2,205.00), Wal-Mart Pharmacy ($150.32), and Walgreens Pharmacy ($11.99). (Ex. 2 at 1).

The parties do not dispute that the charges from Dr. Broussard, Imaging Center of Louisiana, and Walgreens Pharmacy are attributable to the accident and correct as originally listed; totaling $2,951.52. Additionally, the parties do not dispute that certain charges from the Baton Rouge Clinic are properly attributable to the accident, but were incorrect as originally stated and should be amended to $434.00. (R. Doc. 30 at 6; R. Doc. 31 at 9). The parties also do not dispute that certain charges from Wal-Mart Pharmacy are properly attributable to the accident, but were incorrect as originally stated. The parties, however, disagree as to whether $13.81, corresponding to two prescriptions from urologist Dr. Annaloro, should be included. They agree that, at a minimum, $31.79 from Wal-Mart is attributable to the accident. The total charges for undisputed medical expenses are $3,417.31.

The parties also do not dispute that the treatment at Lewy Physical Therapy is attributable to the accident, however they do dispute the charges that Defendant must pay. The total charges from Lewy are $1,544.00, which includes a collections fee of $194.00 and interest of $13.20 that are disputed by Defendant. (Ex. 2 at 20; R. Doc. 30 at 6). The Court finds that the collections fee and interest resulted from Plaintiff's failure to pay Lewy and are not attributable to the accident. Therefore the total for Lewy Physical Therapy is amended to $1,336.80.

The parties' main area of dispute arises from the trip to the emergency room at Baton Rouge General on November 27, 2011, a follow up appointment at Baton Rouge Urology on November 29, 2011, and two prescriptions filled at Wal-Mart that same day. The total charges for the emergency room visit and follow up at the urology clinic were $7,307.00, which includes the charges from Baton Rouge General, Red Stick/EMBCC, Baton Rouge Radiology, and Baton Rouge Urology. The disputed amount from Wal-Mart is $13.81.

Plaintiff argues that these charges are attributable to the accident because the pain in his back was so intense that he thought he had a kidney stone. According to Plaintiff's testimony at trial, the area where the pain originated from was where the seat of the truck "jammed me in the back." (Tr. at 27).

Defendant argues that these charges are not attributable to the accident based on the medical records from Baton Rouge General stating, "patient has a characteristic 'kidney stone' look" and statements in Plaintiff's records from Baton Rouge Urology. (Ex. 4 at 10). The records from Baton Rouge Urology state that Plaintiff had been "hurting for about a month" and quote Plaintiff stating, "it has been hurting before the accident." (Ex. 6 at 5).

As confirmed by the tests run at Baton Rouge Urology, Plaintiff did not have a kidney stone. The trip to Baton Rouge Urology occurred within thirty days of the accident, after having

seen his primary care doctor at the Baton Rouge Clinic relating to the accident, prior to seeing Dr. Broussard about the accident, and was in a location that Plaintiff testified was impacted by the seat of his truck, making the source of the pain more likely than not attributable to the accident. Additionally, even if he had pain prior to and unrelated to the accident, as argued by Defendant, an exacerbation of that pain, resulting to a trip to the emergency room and urologist is recoverable because the Court has found that this accident caused an exacerbation of a pre-existing condition. Therefore, the charges of $7,307.00 and $13.81 are attributable to the accident and should be included in the special damages/medical expenses award.

In accordance with the foregoing, the special damages/medical expenses total $12,074.92. This award includes the treatment from Baton Rouge General ($4,569.00), Baton Rouge Urology ($456.00), Baton Rouge Radiology ($450.00), Red Stick/EMBCC ($1,832.00), Dr. Broussard ($697.00), Imaging Center of Louisiana ($2,242.53), Lewy Physical Therapy (amended to $1336.80), Baton Rouge Clinic (amended to $434.00), Wal-Mart Pharmacy (amended to $45.60), and Walgreens Pharmacy ($11.99).

Consistent with the Court's finding that Plaintiff reached his pre-accident condition prior to March 21, 2013, the Court finds that Defendant is not liable for any future medical care.

### C.     Economic Harm

In the original complaint filed, there were claims for loss of income/wages past, present, and future. (R. Doc. 1-2 at 2). Additionally, the joint pre-trial order lists Plaintiff's employment records, Social Security records, and income tax records as possible exhibits, as well as any employer or co-employees of Plaintiff as possible witnesses. However, at trial and in post-trial briefs, there was no evidence presented as to the types or amount of income/wages lost as a result

of the accident, aside from testimony concerning a potential childcare/learning center. The Court finds that no damages are applicable for any loss of income or wages.

According to his testimony, Plaintiff purchased a 6800 square foot building in 2003 with the intention of turning it into a pre-school or daycare facility. (Tr. at 39). To date, this building has not been completed as intended and is not functioning as a pre-school or daycare facility. Plaintiff claims that this is due to the accident. Specifically, Plaintiff alleges that "after the accident everything just became, you know – shut down." (Tr. 38).

The Court notes at the outset that Plaintiff's attempt to link this accident in 2011 to his failure to develop a building purchased in 2003, and continued failure to develop it in the years following his return to his pre-existing conditions, is a significant stretch. Plaintiff provided no detail regarding anything that he was unable to accomplish during his recovery and had no credible explanation as to why his plans for this building were not realized during the years before and after the effects of this accident. Indeed, at trial, he initially refused to acknowledge <u>any</u> reason for any delay in development.

On cross examination, Plaintiff was asked whether he had problems with the city involving a sewer line that delayed his development. Plaintiff denied any such problems. Plaintiff was asked about his prior deposition testimony, where he testified that he had an ongoing issue with the city for two years that delayed the project. Plaintiff continued to persist in his trial testimony that this did not cause any delay. Finally, Plaintiff was confronted with his prior testimony wherein he was asked "Is that one of the reasons for the hold-up of the building?"; to which he answered "that is another reason right there, too, you know." (Tr. 82). Only after confronted with this blatant inconsistency did Plaintiff finally acknowledge at trial that this was a reason the development did not occur. Through observing Plaintiff's demeanor

throughout his direct and cross examination on this issue, as well as his inconsistent answers, the Court finds that Plaintiff was not credible on any issue regarding economic harm.

More importantly, Plaintiff offered no admissible evidence, whether in the form of expert testimony or otherwise, that quantified any particular economic harm that occurred. Although the Court does not find that Plaintiff has proven any economic consequence as a result the accident, even if he was able to link this failed development to that accident, he has not proven any resulting damages.

        **D.**     **Total Damages**

This Court notes that the primary objective of any award of damages is to restore the injured party, to the extent possible, to his state immediately preceding the injury. Of course, severity and duration are factors to be considered in both an award of damages and in assessing quantum for mental and physical pain and suffering.

Based on the Court's review of the evidence above, Plaintiff presented evidence and met his burden of proof of medical expenses incurred for treatment of his injuries in the total amount of $12,074.92. This amount includes the cost of all treatment, prescribed medication and therapy that can be fairly attributed to the aggravation of his pre-existing condition. As Plaintiff has returned to his pre-existing condition as of March 21, 2013, no award of future medical expenses is applicable.

Turning to the issue of general damages, the Court recognizes that such damages cannot be set with any pecuniary precision. The injury, its severity, and duration are factors to be considered in assessing quantum for pain and suffering. Having considered all of the evidence, the Court finds that Ten Thousand Dollars ($10,000.00) is a reasonable award for Plaintiff's past physical and mental pain, suffering, anguish, and loss of life's enjoyment. This amount is fairly

attributable to Plaintiff's temporary aggravation/exacerbation of his pre-existing degenerative joint disease caused by a back strain from the accident at issue. This amount further factors in Plaintiff's lack of credibility regarding the persistence, intensity or effects of any subjective pain suffered, particularly that which is inconsistent with the medical records and Dr. Broussard's testimony admitted at trial. Despite medical bills in excess of $12,000, the Court does not find that a general damages award above $10,000 is appropriate.

This figure is supported by, among others, the following Louisiana decisions: *Burrell v. Williams*, 938 So. 2d 694 (La. Ct. App. 1st Cir. 2006) in which the court found that an award of $10,000 was not an abuse of discretion for cervical and low back pain that was resolved in approximately five months; *Bernard v. Hartford Ins. Co.*, 12 So. 3d 1098 (La. Ct. App. 3d Cir. 2009) in which the court found that an award of $4,500 was not unreasonable for injuries, including neck pain and a cervical strain, which were resolved in approximately five months, sustained by a Plaintiff with credibility issues; *Swayze v. State Farm Mut. Auto. Ins. Co.*, 184 So. 3d 81 (La. Ct. App. 2d Cir. 2015) in which the court found that an award of $15,000 was reasonable for an aggravation of a pre-existing condition resulting in back pain that lasted over three years and that the pain was not truly resolved by the end of the plaintiff's physical therapy; *Smith v. Safeway Ins. Co. of Louisiana*, 146 So. 3d 944 (La. Ct. App. 2d Cir. 2014) in which the court determined that $3,000 was an appropriate reward for injuries including a low back strain and knee strains, which were resolved in approximately four months; *Stokes v. Stewart*, 774 So. 2d 1215 (La. Ct. App. 1st Cir. 2000) in which the court determined that an award of $10,000 was not an abuse of discretion for injuries, including a back sprain.

## IV.   CONCLUSION

Therefore, the Court finds that the damages suffered by Plaintiff as a result of the accident on November 1, 2011, as demonstrated by the evidence adduced at trial, are as follows:

Past Medical Expenses: $12,074.92

Past Physical/Mental Pain, Suffering, Anguish and Loss of Life's Enjoyment: $10,000.00

Total Damages: $22,074.92 plus interest

Accordingly,

**IT IS ORDERED** that there be judgment in favor of Plaintiff, Joseph S. Divincenti, and against Defendant, Shelter Mutual Insurance Company, in the amount of Twenty-Two Thousand, Seventy-Four and 92/100 Dollars ($22,074.92), plus interest, with each party to bear their own expenses.

Signed in Baton Rouge, Louisiana, on July 13, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**